Paul Coghlan et al., Appellees, v. Federal Life Insurance Company, Appellant.

Gen. No. 39,004.

Heard in the third division of this court for the first district at the October term, 1936. Opinion filed June 30, 1937.

ECKERT & PETERSON, of Chicago, for appellant; TOM LEEMING, of Chicago, of counsel.

BURRY, JOHNSTONE, PETERS & DIXON, of Chicago, for appellees; JOHN C. TRUSSELL, of Chicago, of counsel.

Mr. Justice Hall delivered the opinion of the court.

By this appeal, defendant seeks the reversal of a judgment against it entered in the superior court of Cook county for the sum of $1,980 and costs of suit.

The action is predicated upon an accident policy issued by the defendant company to Victoria M. Coghlan, who met her death by monoxide gas poison. The cause was submitted to a jury. The insurance policy, among other things, provides that:

"The company will pay for loss of life—$1,500—sustained by the wrecking or disablement of any omnibus or taxicab owned and operated by a private person, or any vehicle or car operated by private carrier or private person in or on which the insured is riding.

"This part covers persons riding in or driving buses, privately owned taxicabs, trucks, pleasure automobiles, motorcycles and horse-drawn vehicles."

The record indicates that between 4 and 5 o'clock of the afternoon of February 21, 1934, Paul Coghlan, son of the insured, came to his home, found the garage doors of a garage at the rear of his home, open, with his mother, the insured, seated in the car in the garage, and that she was dead. He testified to the effect that he summoned a doctor, who stated that his mother had been dead for an hour or so; that at the time he found his mother, she was fully clothed, and that her outside clothing consisted of a cloth coat with a fur collar, that she wore overshoes and a hat, and had her purse with her; that the ignition was on in the car, and he stated that "apparently it had been driven before"; that the doors of the car, as well as its windows, were closed at the time he found her, but that the engine was not running at that time. The witness stated that it would be impossible for him to say whether or not his mother was getting ready to go out, or whether she was just coming in, but that she was

fully dressed and ready to drive the car; that he had previously attempted to enter the house, but that he found the doors locked, but that the two doors of the garage were open, and that the temperature at that time was above freezing.

A witness produced by plaintiffs testified that after the death of Mrs. Coghlan, the witness took the car out, drove it and found a gas leakage; that there was a heater on the outside of the muffler; that the muffler of the car was rusted and broken, with an opening in it; that the heater of the car inclosed the entire muffler, and that the condition he found made it easy for gas to get into the car. He further stated that he examined the manifold gaskets, and found that they leaked, and that one of the valves was burned.

Another witness for plantiffs testified that prior to the accident he had charge of the maintenance of the car for the decedent, and that he had examined it a short time before her death; that he found a condition which indicated that there was an exhaust leakage, and that he noticed a unusual amount of fumes coming through the heater of the car and the floor boards thereof; that he advised the decedent to have the car opened up and the valves ground and the exhaust taken care of; that at that time he made an attempt to close the door of the heater to keep the fumes from coming into the car, but because of the rust that had gathered, it could not be closed, and that the witness had to leave it open; that the mechanical situation in and about the muffler and the radiator was such that any fumes escaping would be carried back through an opening in the floor boards and into the car.

There seems to be no question as to the cause of the woman's death. Defendant offered no evidence. At the close of plaintiffs' case, both plaintiffs and defendant moved the court for a directed verdict. The court

directed a verdict for the plaintiffs, upon which verdict the judgment appealed from was entered.

Defendant insists that under the insurance policy, which provides indemnity for death resulting from the "wrecking or disablement of a passenger vehicle . . . in or on which the insured is riding," does not justify the verdict and judgment in this case. It is insisted that the facts do not show that the insured was either "riding in or driving" the car at the time of the occurrence. In its brief defendant states that it is conceded that the engine of the car had been running, and concedes that the manner in which decedent was dressed, together with the fact that the house was locked and that her purse was beside her, is evidence of the fact that she had either been riding in the car, or intended to ride in it.

No Illinois case is cited which is at all in point. In *Johnson v. Federal Life Ins. Co.,* 60 N. D. 397, 234 N. W. 661, the insured's car had been stalled in a mudhole, and two of the occupants were found dead, with the engine still running, and the point was made that it was not shown that the people were riding in the car at the time, and that under a similar provision in an insurance policy, recovery could not be had. In affirming the judgment based on the policy, the court said:

"It will be noted that the contentions of the appellant rest upon a close literal construction of the policy. It seems to be assumed that one cannot be riding in a car unless the car is in motion, and that the instant it stops he ceases to ride. . . . To exclude the inhalation of carbon monoxide gas during a period when the car is stalled in a mudhole on the theory that motion had ceased would be not merely to adopt a narrow meaning of the language of the contract, but to actually deprive the words used of a portion of their ordinary meaning. The occupant of a car while it is stalled in a mudhole, . . . is still riding in the car in quite the

same sense as a passenger upon a steamship at anchor may be riding the waves. . . . 'It is true that the automobile that appellee was driving or operating at the time had ceased to move, when he undertook to go therefrom, but the terms of the policy did not limit appellee's liability to an injury only when the automobile was in actual motion. The policy is to be construed more strongly against appellant, and, had it been the intention to limit the benefit to the insured only while he was moving in his automobile, it must be presumed that it would have been so stated in the contract.' "

We are of the opinion that the construction defendant puts upon the policy and its definition of the word "riding" are entirely too narrow. Under the defendant's construction of this contract, if the driver of an automobile came to a stop at a traffic light, and while standing there was injured, there could be no recovery. In this case, as already stated, it is agreed that the decedent had either just started or just finished a journey. The ignition of the car was on, and there is every indication—including the fact that the evidence shows that she died of monoxide gas poison—that the motor of the car had been running, and that the running of the motor caused the formation of the gas which caused her death. It is in evidence that there was a "disablement" in the car's mechanism which caused the gas to enter the body of the car.

The judgment is affirmed.

*Affirmed.*

DENIS E. SULLIVAN, P. J., and HEBEL, J., concur.